UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BILLY P. GREER,<br><br>    **Plaintiff,**<br><br>    v.<br><br>BOARD OF TRUSTEES OF THE UNIVERSITY OF THE DISTRICT OF COLUMBIA,<br><br>    **Defendant.** | Civil Action No. 23-2296 (JEB) |

**MEMORANDUM OPINION**

    In June 2020, *pro se* Plaintiff Billy P. Greer injured his toe while working as a police officer for Defendant University of the District of Columbia. After being examined by doctors, he was cleared to return to his job under certain work restrictions. The University, however, believed that such restrictions were incompatible with his essential job duties, so it denied his request for light duty and ultimately terminated him. Now — three years later — Greer brings suit against the University for failure to accommodate his disability under the Americans with Disabilities Act, and for disparate treatment under the Age Discrimination in Employment Act. Defendant moves to dismiss the Complaint on the ground that Greer did not timely exhaust his administrative remedies. The Court agrees and will grant the Motion.

**I.  Background**

    At this procedural stage and because Plaintiff is *pro se*, the Court draws the well-pled facts from the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss and accepts them as true. See Brown v. Whole Foods Market Group, Inc., 789 F.3d 146, 152 (D.C.

1

Cir. 2015). It also considers additional facts set forth in the undisputed documents incorporated in the Complaint and attached to the Motion that are integral to the claim, as well as matters subject to judicial notice, without converting this into a motion for summary judgment. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

Greer worked as a police officer for the University from 1989 until December 17, 2020. See ECF No. 1 (Compl.), ¶¶ 6–7. In that role, his essential duties included "being able to pursue, subdue, and arrest individuals, climb stairs, run, dodge obstacles, drag persons and objects, climb over and under obstacles, perform repetitive motions, [and] walk long distances." ECF No. 1-1 (Pl. Exhs.) at 55 (UDC Job Classification Description). He was 57 years old when this dispute arose. See Compl., ¶ 39.

On June 7, 2020, he fractured his toe while on the job. Id., ¶¶ 9, 13. He entered an emergency room on the same day with pain and swelling and was discharged with instructions to see a foot specialist. Id., ¶¶ 10–12. He met with such a doctor four days later and was prescribed a surgical shoe and 6–8 weeks of light duty. Id., ¶ 13. Specifically, Greer was instructed to limit his walking and standing. Id.

Based on these instructions, on June 11 Plaintiff requested a light-duty assignment from the University. Id., ¶ 14. This request was denied by Cerina Smith, a University police captain, and Greer was told to first submit a worker's compensation claim, which he filed the following week. Id., ¶ 16. As part of the claims process, he was further examined by three other doctors, and on July 1, the D.C. Office of Risk Management (ORM) notified Greer's supervisor that he could return to work with some restrictions. See Pl. Exhs. at 11–12 (Email from ORM). Those restrictions included: sitting 80% of the time, occasionally lifting no more than ten pounds, occasionally pushing or pulling twenty pounds, occasionally standing or walking (up to three

hours per day), bearing weight as tolerated, no climbing stairs, and no climbing ladders. Id. at 9 (Physician's Report).

The next day, Smith notified ORM that UDC was unable to accommodate his restrictions because his job required him to "be on patrol and be able to respond to any and all emergencies on . . . campus." Id. at 11 (July 2 Email from Cerina Smith). On August 4, 2020, Greer petitioned his D.C. councilmember to intervene in the dispute. See Compl., ¶ 20. The councilmember's office informed Plaintiff of the University's reply the following week: "[Greer was] not qualified for other positions that involved lite [sic] duty work" because he had refused necessary "additional training"; further, his official duties required him to "wear proper shoes." Pl. Exhs. at 14 (Email from Oscar Montiel). Greer denies that he ever refused additional training. See Compl., ¶ 21. On August 17, he requested information from the University about these trainings, but his request apparently went unanswered. Id., ¶ 22; Pl. Exhs. at 17 (August 17 Email from Greer), 20 (Smith Dep. in Administrative Proceedings).

The Complaint is devoid any of facts thereafter, with two exceptions: passing references to a December 2021 deposition of Smith and a copy of an Equal Employment Opportunity Commission right-to-sue notice dated May 12, 2023. See Compl., ¶ 45; Smith Dep.; Pl. Exhs. at 43–44 (EEOC Notice).

The Court, however, finds from Defendant's exhibits and its own judicial notice, certain other relevant facts: on November 2, 2020, the University issued a termination notice to Greer, see ECF No. 6-1 (Def. Exhs.) at 5 (EEOC Charge), and in December 2020 his employment was officially terminated. Id. On December 17, 2020, Greer contested the decision by filing a Petition for Appeal with the D.C. Office of Employee Appeals (OEA), which ultimately found that he had been terminated for submitting a fraudulent worker's compensation claim. See Emp.

3

v. Univ. of D.C., 70 D.C. Reg. 14209, 14209, 14220 (Sept. 18, 2023).  On September 8, 2021, Plaintiff also filed a charge of discrimination with the EEOC based on race, color, sex, age, disability, and retaliation.  See EEOC Charge.  On May 12, 2023, the EEOC dismissed Greer's discrimination charge and issued the aforementioned right-to-sue notice.  See EEOC Notice.

Greer then filed the instant suit on August 9, 2023.  While he at times mentions Title VII, the ADEA, the ADA, and local D.C. ordinances, see Compl., ¶¶ 1, 24–26, 45, only two actual causes of action are pled: failure to accommodate a disability under the ADA (Count I) and disparate treatment based on age under the ADEA (Count II).  Although a third count is included in the Complaint, it is substantively repetitious of the ADA claim.  Defendant has now moved to dismiss the case.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss any count of a complaint that fails "to state a claim upon which relief can be granted."  Although the pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 533 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

"A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the pleadings, see Fed. R. Civ. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits.  See Fed. R. Civ. P. 10(c).  Documents that a defendant attaches to a motion to dismiss are part of the pleadings under Rule 10(c) if they are integral to its claim, they are referred to in the complaint, and their authenticity is undisputed."

4

Pernice v. Bovim, 183 F. Supp. 3d 84, 87 (D.D.C. 2016) (cleaned up). The Court may consider those materials, as well as matters within judicial notice, without treating the motion as one for summary judgment. St. Francis Xavier Parochial Sch., 117 F.3d at 624. The factual allegations presented in a complaint must be presumed to be true and should be liberally construed in a plaintiff's favor. See Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).

**III.   Analysis**

The University contends that dismissal is warranted both because Plaintiff failed to timely exhaust his administrative remedies and because he has not stated a claim upon which relief may be granted. The Court need only consider the first ground, which it examines in relation to each count.

   A.   ADA

"Before filing a lawsuit under the ADA, Title VII, or ADEA, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice." Cooper v. Henderson, 174 F. Supp. 3d 193, 202 (D.D.C. 2016). Where the EEOC has a work-sharing agreement with the state or local fair-employment-practices (FEP) agency, as is the case here in Washington, the limitations period is extended to 300 days. See Carter v. George Washington Univ., 387 F.3d 872, 879 (D.C. Cir. 2004); Jenkins v. Dist. of Columbia, 2023 WL 4183795, at *5 (D.D.C. June 26, 2023) (noting ongoing work-sharing agreement). Where an employee alleges that she was the victim of a discrete discriminatory act, the timeliness inquiry focuses on that particular act. See Achagzai v. Broad. Bd. of Governors, 170 F. Supp. 3d 164, 175 (D.D.C. 2016) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)); see also Teague v. Nw. Mem. Hosp., 492 F. App'x 680, 684 (7th Cir. 2012) ("[A] refusal to accommodate is a discrete act — not an ongoing

5

omission . . . ."). "Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred." Morgan, 536 U.S. at 113. This time period is not jurisdictional, however, and is subject to equitable doctrines such as tolling or estoppel. Id.

The Court also notes that the Office of Employee Appeals — where Plaintiff petitioned regarding his firing in December 2020 — is not designated as an FEP agency, see 29 C.F.R. § 1601.80, and would not qualify as one under EEOC regulations. Compare 29 C.F.R. § 1601.70(a) (requiring FEP agencies to have jurisdiction over unlawful employment discrimination) with D.C. Mun. Regs. tit. 6-B, § 604.1 (defining OEA jurisdiction). Plaintiff's filing with the OEA thus does not constitute exhaustion.

Here, the University argues that Greer failed to timely exhaust his administrative remedies before bringing this suit for refusal to provide reasonable accommodations. See ECF No. 6 (MTD) at 3. The record establishes that Plaintiff filed a charge for disability discrimination with the EEOC on September 8, 2021. See EEOC Charge. Because the EEOC has a work-sharing agreement with the D.C. Office of Human Rights, Greer was required to file a charge within 300 days of the alleged discriminatory act. See Carter, 387 F.3d at 879. The Complaint alleges two instances when the University refused to accommodate Plaintiff's injury: first on June 11, 2020, when Smith declined the foot specialist's work restrictions, and then on July 2, 2020, when she declined the ORM work restrictions. See Compl., ¶¶ 13–15, 19. Greer's filing with the EEOC was thus untimely as to both dates, and his ADA claim must be dismissed for failure to exhaust administrative remedies. This should come as no surprise to Greer, who encountered a similar result the last time he sued the University for discrimination. See Greer v.

Bd. of Trs. of Univ. of D.C., 113 F. Supp. 3d 297, 308 (D.D.C. 2015) (finding alleged discrete acts of discrimination time barred where they fell outside 300-day filing window).

In his Opposition to the University's Motion, Greer rattles off exceptions to the exhaustion requirement, albeit under California law: when the controversy lies outside an agency's jurisdiction; when the pursuit of an administrative remedy would result in irreparable harm; when the administrative agency cannot grant an adequate remedy; and when the aggrieved party can positively state what the administrative agency's decision in her particular case would be. See ECF No. 9 (Opp.) at 1–2 (citing California state precedent). Even if any of these were applicable in the federal context, Plaintiff's reliance on them is conclusory. He does not state why an exception — of any variety — applies to him or why the exhaustion defense "must [therefore] be disregarded." Id. at 2. General statements about the law, without factual support, do not establish exceptions to the exhaustion requirement. See Achagzai, 170 F. Supp. 3d at 179. Nor does his Complaint otherwise contain facts that might lead the Court to find an exception. See, e.g., Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) (suggesting that equitable tolling might be appropriate where complainant "received inadequate notice," where "motion for appointment of counsel [was] pending," where agency had "led complainant to believe that she had done everything required of her," or where "affirmative misconduct on the part of a defendant lulled complainant into inaction"). The Court, therefore, will dismiss the ADA claim under Rule 12(b)(6) for failure to timely exhaust administrative remedies.

B.    ADEA

Like the ADA, the ADEA requires a plaintiff to file a charge of discrimination with the EEOC or analogous local agency before filing suit in federal court. See Greer, 113 F. Supp. 3d at 306–07 (citing 29 U.S.C. § 626(d)(1)(A)); Al'Zaiem v. Mayorkas, 2023 WL 4999177, at *5

7

(D.D.C. Aug. 4, 2023).  The same 300-day time window applies, see Greer, 113 F. Supp. 3d at 307, which remains subject to equitable exceptions.  See Achagzai, 170 F. Supp. 3d at 173.

The exhaustion analysis here is the same as above.  In other words, Plaintiff filed his EEOC charge for age discrimination on September 8, 2021.  The basis for Greer's disparate-treatment claim is that in 2019 the University did accommodate a younger officer who had also suffered a foot injury.  See Compl., ¶ 35.  It follows, then, that the alleged violation occurred when the University declined to similarly permit Greer's work restrictions — on both June 11 and July 2, 2020.  Id., ¶¶ 13–15, 19.  These dates, of course, precede the September 2021 EEOC charge by more than 300 days.  In addition, as above, neither the Complaint nor the Opposition contains facts that give rise to an exception to the exhaustion requirement.  The ADEA claim is thus also time barred.

**IV.   Conclusion**

For these reasons, the Court will grant Defendant's Motion to Dismiss without prejudice.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 1, 2024